UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:08CV122

LARRY STINSON                                                 PLAINTIFF

VS.

MICHAEL J. ASTRUE,
       Commissioner of Social Security                            DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Larry Stinson ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be vacated and the matter remanded for additional proceedings not inconsistent with this opinion.

## PROCEDURAL HISTORY

On August 12, 2005, Claimant filed application for supplemental security income payments, alleging that he became disabled as of January 1, 1999. After a hearing, Administrative Law Judge D. Lyndell Pickett ("ALJ") determined that Mr. Stinson's lumbar and thoracic degenerative disc disease and generalized arthritis, headaches, reading disorder and mild anxiety were severe impairments, but that he retained the residual functional capacity for a range of medium level jobs that exist in significant numbers. This became the final decision of the Defendant when the Appeals Council denied review on July 3, 2008.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative

proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially:

1. The claimant must not be engaged in substantial gainful activity.

2. The alleged disabling impairment must be "severe," meaning that it significantly limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking. 20 CFR Section 416.921.

3. If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

4. The claimant must be unable to do his or her past relevant work.[1]

5. If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs. Born

---

[1] In the current case, there is no past relevant work; thus, this step is deemed satisfied.

v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

Plaintiff argues that the ALJ erred at Step 3. At that stage, the plaintiff bears the burden of proving that he meets or equals a Listing. Burress v. Secretary, 835 F.2d 139 (6th Cir. 1987). He must present specific medical information to satisfy all of the Listing criteria. 20 C.F.R. Sec. 416.925. Listings are to be interpreted very strictly, and the plaintiff must establish the existence of all elements of the Listing. Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), Hale v. Secretary, 816 F.2d 1078 (6th Cir. 1987). To meet a listing, a claimant must use specific *medical* evidence. That is, at Step Three, it is insufficient to point to the existence of an impairment and use various types of evidence to argue that the functional restrictions imposed by that impairment are disabling; rather, the plaintiff must point to medical evidence establishing *all* of the criteria set out in the listing. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The plaintiff cannot show that he "equals" a Listing simply by showing overall functional impact of his condition; "equivalence" is a test used only when the claimant's impairment is unlisted, and it is satisfied only by presenting medical evidence of findings "equal in severity to *all* the criteria for the one most similar impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990).

The ALJ did not identify intellectual deficit as a severe impairment. However, the Listing Mr. Stinson believes is applicable in his case is 12.05 ©), which concerns mental retardation. This Listing requires a showing of subaverage intellectual functioning with deficits in adaptive functioning manifesting during the developmental period *and* a showing of a *valid* IQ score of 60 through 70 together with an additional impairment imposing a work-related limitation of function. The record includes school records indicating high school graduation with a special education

placement, as well as significant difficulty with reading and other adaptive functioning.

The record also includes two different psychological evaluations. Dr. Dennis evaluated Mr. Stinson in December of 1998, administering several tests, including the WAIS-III, and reporting a verbal IQ of 66, and a full scale IQ of 66. Tr. 207. Dr. Dennis concluded that Mr. Stinson was "quite limited" in his ability to function. Tr. 209. In December of 2005, Dr. Dennis again evaluated the claimant, again administering the WAIS-III as well as other instruments. On this occasion, he reported a verbal IQ score of 48-57, performance IQ of 48 to 60, and full scale IQ between 44 to 56. Tr. 248. However, Dr. Dennis cautioned that the test results "represented a very low estimate of his functional ability," and "should be interpreted with extreme caution as Mr. Stinson performed poorly for secondary gain." Tr. 248. Dr. Dennis took the rather unusual step of affirmatively opining that Mr. Stinson was "malingering on this examination." Tr. 252. He also opined that Mr. Stinson had "adequate adaptive skills." Tr. 251.

The ALJ determined that claimant did not meet the severity requirements of Listing 12.05, because of "the opinion of Dr. Dennis that the claimant malingered on IQ testing, as well as his opinion that the claimant has adequate adaptive functioning." Tr. 18. The Court can perceive no error in the ALJ's rejection of the December 2005 IQ scores, in light of the fact that Dr. Dennis made it clear that the scores were not "valid," an explicit requirement of Listing 12.05, and in light of Dr. Dennis' opinion that adaptive skills were "adequate" as of that time.

While Dr. Dennis' opinion provides a sound reason for rejecting the 2005 IQ scores, the Court is puzzled by the ALJ's failure to move on to discussion of the 1998 evaluation, when Dr. Dennis found no malingering, made no reference to "secondary gain," and explicitly commented that "the examination represented a fair estimate of his functional ability." Tr. 207. The ALJ provided

no basis for rejecting or ignoring the 1998 evaluation, nor is the logic of such rejection self-evident. Indeed, reduced to the bare essentials, the IQ results (coupled with expert opinion regarding effort) are that Mr. Stinson scored in the 40s and 50s when he was not putting forth true effort, but he scored in the 60s and 70s when he did put forth true effort. Scores in the 60s may not establish per se disability at Step 3, but they certainly reflect more than an "insignificant" intrusion on functional capacity. Thus, while there may have been no error at Step 3,[2] the Court is unable to find in the record substantial evidence to support the ALJ's conclusion that intellectual impairment does not represent a "severe impairment."

Failure to find a particular impairment severe does not, standing alone, constitute reversible error. In Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987), the Court established that there is no error in finding a particular impairment non-severe so long as the effect of that condition is considered in determining whether the claimant "retained sufficient residual functional capacity to allow him to perform substantial gainful activity." That is, the significance of finding an impairment "severe" or "non-severe" is whether the examination of the claimant's circumstances is taken to the next step in the sequential analysis. If any impairment is found severe, the analysis is taken to the next step, such that the mere failure to classify a second impairment severe is irrelevant, *so long as the actual impact of that impairment is considered as part of the whole*.

In this case, the ALJ did *not* consider the actual impact of an intellectual impairment in

---

[2] Because remand is necessary, we need not address Dr. Dennis' differing views concerning adaptive functioning. It is theoretically possible that adaptive abilities might vary over time, while IQ scores would not be expected to show great variation, but nothing in the record bears on this one way or the other, and we must not speculate as to what might have been in the ALJ's mind.

determining Mr. Stinson's residual functional capacity. Stating that he was "[g]ranting ... some benefit of the doubt," the ALJ accepted that Mr. Stinson's anxiety represented a severe impairment, but he did not find that Mr. Stinson's intellectual deficits imposed any significant limitations, nor did he address any such deficits in hypothetical questions posed to the vocational expert. Tr. 18, 296-297. The Court concludes that remand is necessary to permit the ALJ to address this issue.

The necessity of remand means that it is unnecessary for the Court to address the plaintiff's other arguments. However, in view of the emphasis both ALJ and plaintiff placed on lack of treatment history and reasons therefor, the Court notes in passing that counsel argument does not constitute evidence, and there is nothing in the *evidence* to support the argument that plaintiff lacks financial resources to pursue needed treatment.

An order in conformity has this day entered.